UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GRACE ESPINDOLA TRUJILLO and A.T., a minor child,

    Plaintiffs,

v.

SACRAMENTO CITY UNIFIED SCHOOL DISTRICT, et al.,

    Defendants.

No. 2:16-cv-02427-MCE-KJN

**MEMORANDUM AND ORDER**

Through the present action, Plaintiff Grace Espindola Trujillo ("Trujillo"), as Guardian ad Litem for her minor son, Plaintiff A.T. ("A.T."), alleges that Defendant Sacramento City Unified School District ("the District") discriminated and retaliated against her and A.T. for advocating on A.T.'s behalf to receive services to which he was entitled as a disabled child under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). The District now brings a Special Motion to Strike Plaintiffs' First and Fourth Causes of Action, which are brought under California's Unruh Act, California Code of Civil Procedure § 51, et seq. ("Unruh Act"). Those claims allege that the District denied A.T. access to public facilities due to his disability (First Cause of Action) and denied Trujillo access by retaliating against her (Fourth Cause of Action). The District's Motion is brought under the auspices of California Code of Civil Procedure

§ 425.16, the State's so called Anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute.  As set forth below, the District's Motion is GRANTED with leave to amend.[1]

## BACKGROUND[2]

Plaintiff Trujillo claims that her son, A.T., sustained traumatic brain injury that apparently resulted from complications during his birth.  A.T. also suffers from cognitive delays and impulse control issues along with insomnia, for which he frequently requires sleeping medication in order to ensure adequate rest.  According to Plaintiffs' Complaint, Trujillo serves as his advocate, care coordinator and caregiver, and also advocates for A.T. and other students with disabilities.

During the 2015-16 school year, A.T. attended the Sam Brannon Middle School, a school within the District.  On September 29, 2015, Trujillo claims that when she brought her son to school, she notified front office staff that he had had a difficult night and might be drowsy from medication she had administered.  Elizabeth Hardcastle,[3] the one-on-one instruction aide assigned to A.T.,[4] recalls being told by Trujillo that A.T. had a "rough night."  Decl. of Elizabeth Hardcastle, Ex. 1 to Def.'s Request for Judicial Notice ("RJN").[5]  A.T. had apparently been given medications to assist in both sleeping and then wakening.  Id. at ¶ 10.  According to Hardcastle, Trujillo mentioned that "three doses" had been given to A.T., but that A.T. had corrected his mother, indicating that he

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[2] Unless otherwise noted, this background section is drawn, at times verbatim, from the allegations contained in Plaintiffs' Complaint.

[3] Hardcastle is erroneously referred to in Plaintiffs' Complaint as "Elizabeth Lancaster".

[4] Hardcastle was employed by Learning Solutions Kids, Inc., an entity that originally was named as a Defendant to this lawsuit but has since been dismissed.

[5] The District's RJN is unopposed and is accordingly GRANTED.

2

had in fact received four doses.  Id.  Hardcastle states that A.T. was sluggish during his first period class, and that when he became almost non-coherent by second period, the classroom teacher ordered that he be taken to the office of the school nurse.  Hardcastle goes on to relate that the school nurse was alarmed, stated A.T. needed to go home, and told Hardcastle that she should file a report with Child Protective Services ("CPS"). Id. at ¶ 11.  Plaintiffs' Complaint, for its part, alleges that "[s]chool staff encouraged Ms. [Hardcastle] to file a complaint with CPS."  Pls.' Compl., ¶ P.

The school called Trujillo at 11:28 a.m., but she claims she could not take the call because she was driving home to participate in a meeting regarding services to be provided by the Alta Regional Center, a California state governmental entity responsible for facilitating A.T.'s services.  The school called A.T.'s father ten minutes later, who told office staff that Trujillo would be picking up A.T.  Trujillo did not arrive at school until approximately 1:10 p.m., more than an hour and a half after the school first called. Trujillo claimed she reiterated to the office manager that A.T. had been given prescribed sleeping pills within doctor-approved guidelines.

At approximately 2:35 p.m., Hardcastle made a complaint to CPS, allegedly on grounds that Trujillo had overmedicated her son and brought him to school while sick. Trujillo claims that she feared the resulting investigation would reduce her credibility as an advocate for children with special needs.  She claims that after the incident of September 29, 2015, both she and the school believed that a change in placement was appropriate.  Between October 6, 2015 and November 9, 2015, due to disagreement between the school and Trujillo as to an adequate alternative, no agreed placement was in effect.  On or about November 9, 2015, an agreement was ultimately reached.

In the meantime, Trujillo claims she received a letter from the District, dated October 22, 2015, stating that her child was truant.  She thereafter allegedly received additional truancy letters on December 10, 2015, and January 14, 2016, respectively.

According to Trujillo, both the CPS referral and the truancy notices served to retaliate against her and her son because she had spoken at a District School Board

3

Meeting on September 17, 2015, "criticizing corruption in the education system as evidenced by overly generous benefits packets." Compl., ¶ E. Trujillo further alleges that she had complained that Hardcastle was late to school on the morning of the September 29, 2015 incident, which also served as a basis for Defendant's retaliation.[6] Trujillo, for her part, has also attached an unauthenticated statement from the school nurse which appears to indicate that she observed A.T. to be "oriented and awake," and that it was only because of the child's own statement that he did not feel well, as well as Hardcastle's concern that he was "drowsy and lethargic," that she agreed that Trujillo should be notified and A.T. sent home. The statement from the nurse, Tawney Lambert, contains no reference to the propriety of any CPS referral.

**STANDARD**

A plaintiff's claim which arises from an act, by a defendant, made in furtherance of that defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," has no merit and will not stand under California's anti-SLAPP statute. Cal. Civ. Code § 425.16(b)(1). A defendant may use an anti-SLAPP motion to strike in federal court. Thomas v. Fry's Electronics, Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005). Anti-SLAPP safeguards are designed to "protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression." Metabolife Intern. Inc. v. Wornick, 264 F.3d 832, 837, n. 7 (9th Cir. 2001).

"[S]ection 425.16 expressly 'defines the kinds of claims that are subject to the anti-SLAPP procedures.'" City of Cotati v. Cashman, 29 Cal. 4th 69, 75 (2002), citing Chaves v. Mendoza, 94 Cal. App. 4th 1083, 1087). Under that statute, protected activities include:

---

[6] Hardcastle states she was present when A.T. was dropped off at school that morning and heard Trujillo describe how she had given three doses of sleeping medication to A.T. the previous evening. Hardcastle Decl., ¶ 10.

4

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

Ruling upon an anti-SLAPP motion requires a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity . . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises, LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action, but rather, the defendant's <u>activity</u> that gives rise to his or her asserted liability - - and whether that activity constitutes protected speech or petitioning." Navellier v. Sletten, 29 Cal. 4th 82, 92 (2002) (emphasis in original). Consequently, a trial court must initially "focus on the substance of the plaintiff's lawsuit in analyzing the first prong of a special motion to strike." Flores v. Emerich & Fike, 416 F. Supp. 2d 885, 897 (E.D. Cal. 2006), citing Scott v. Metabolife Intern., Inc., 115 Cal. App. 4th 404, 413-14 (2004). As the California Supreme Court has noted, the critical point in that regard "is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." City of Cotati, 29 Cal. 4th at 78 (emphasis in original ). To that end, "[a] defendant meets it burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)." Id.

///

///

If the court finds that the first step for adjudicating an anti-SLAPP motion is satisfied, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. Cal. Code Civ. P. 425.16(b)(1). Equilon Enterprises, 29 Cal. 4th at 67. In making that determination, the court considers the pleadings, as well as supporting and opposing affidavits setting forth the facts upon which liability or defense are based. Cal. Code Civ. P. § 425.16(b)(2). The anti-SLAPP statute must be construed broadly in order to both encourage continued participation in matters of public significance and to restrict the chilling of such protected activity through abuse of the judicial process. Id. at § 425.16(a).

If an anti-SLAPP motion to strike is granted, courts generally permit leave to amend, particularly if no previous amendment has been permitted. Verizon Delawarem Inc. v. Covad Communications. Co., 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment.").

## ANALYSIS

The District argues that both the First and Fourth Causes of Action in Plaintiffs' Complaint (both brought pursuant to the Unruh Act) should be dismissed because both are predicated on actions—reporting suspected child abuse and issuing truancy notices for non-attending students—that are mandated by law. According to the District, under the provisions of California's Child Abuse and Neglect Reporting Act, California Penal Code § 11164, et seq. ("CANRA") school employees are mandated by law to report any suspected abuse. As mandated reporters, the District argues that its employees cannot be held liable for any report required or authorized under CANRA—to the contrary, school employees would in fact be subject to criminal prosecution if they did not report an instance of suspected child abuse or neglect. The District further alleges that they

are also required to issue truancy notices under California's Compulsory Education law to the parents or guardians of children meeting the criteria for truancy. Because the District contends that Plaintiffs' allegations against it target obligations founded on well-established California statutes, it avers that dismissal of those claims under the anti-SLAPP statute is proper.

As an initial matter, the Court agrees with the District that the First Cause of Action, which is made on behalf of A.T., is explicitly based on the reporting of suspected child abuse and truancy, respectively. See Compl., ¶¶ 7-8. In addition, Trujillo's Unruh Act claim, as set forth in the Fourth Cause of Action, states only that the District retaliated against Plaintiffs based on A.T.'s disability in making a false report to CPS. Id. at ¶ 31. While both claims also refer to the IDEA in alleging 1) that because a placement decision was involved, the IDEA was implicated (First Cause of Action, ¶¶ 3-6); and 2) that the District violated the IDEA by failing to have an Individualized Education Plan ("IEP") in place at the beginning of the 2015-16 school year, any reference to the IDEA appears peripheral to the gravamen of the claim which point virtually exclusively to the District's alleged liability for reporting suspected abuse as well as truancy.[7]

As indicated above, anti-SLAPP protection inures to "any official proceeding authorized by law." Cal. Code Civ. Pr. § 425.16(e). Mandated reporters under CANRA include any teacher and instructional or teacher's aide, as well as any classified employee of a public school and therefore squarely encompasses individuals either employed by the District or working with students at District facilities. Cal. Penal Code § 11165.7. Consequently, Hardcastle qualified as a mandated reporter, as did any District employees who may have encouraged her to file a complaint with CPS.[8]

---

[7] It should also be noted that the District has produced admissible evidence by way of a declaration from its Special Education Director that A.T. indeed had an IEP in place when he began attending Sam Brannan Middle School at the beginning of the 2015-16 school year. Decl. of Becky Bryant, ¶ 4. No controverting evidence has been produced by Plaintiffs.

[8] The fact that Hardcastle alone filed the CPS report was proper under CANRA. Cal. Penal Code § 11166(h) provides that when two or more persons with a duty to report jointly have knowledge or circumstances requiring a report, the report may be made by a single person.

Under the Act, reports of suspected abuse or neglect "shall be made" by a mandated reporter to an agency qualified to accept and investigate the report. Cal. Penal Code § 11165.9. A mandated reporter who fails to report suspected abuse or neglect[9] may be subject to both fines and imprisonment. Id. at §11166.01(b). Given that requirement, it has long been held that reports to CPS fall within the scope of the anti-SLAPP statute. See, e.g., Dwight R. v. Christy B., 212 Cal. App. 4th 697, 711 (2013). Significantly for purposes of the present matter, CANRA confers absolute immunity for mandated reporters by providing that that no such reporter "shall be civilly or criminally liable for any report required or authorized by this article." Cal. Penal Code § 11172(a).

Here, Hardcastle states that she heard Trujillo report that she had given A.T. three doses of sleeping medication, as well as additional medication to help him wake up. A.T. himself reportedly corrected his mother and said that four doses had been administered. Hardcastle Decl., ¶ 10. Hardcastle reported A.T. as pale and "very sluggish" during the first period of school, and states that he had "become almost non-coherent" by the second period, which prompted his second period teacher to tell Hardcastle to take A.T. to the nurse's office. Id. at ¶ 11. These circumstances would appear to substantiate a reasonable suspicion of neglect sufficient to trigger the reporting requirement. The only suggestion otherwise is an unauthenticated statement by the school nurse that A.T. was "oriented and awake" and consequently not properly before the Court for consideration.[10] In addition, while Trujillo claims that Hardcastle was late to work on the morning in question, Hardcastle contends otherwise and states that she was there as scheduled when Trujillo arrived and explained her son's medical

---

[9] CANRA employs a "reasonable suspicion" standard for reporting suspected abuse. An obligation to report is triggered when "it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training and experience, to suspect child abuse or neglect." Id. at § 11166(a)(1). Significantly, the Act's reasonable suspicion standard is defined broadly. It "does not require certainty that child abuse or neglect has occurred nor does it require a specific medical indication of child abuse or neglect; any 'reasonable suspicion' is sufficient." Id.

[10] The District's Objections to Plaintiffs' Evidence Submitted in Support of Opposition, which encompass not only the unauthenticated declaration from the school nurse, Tawney Lambert, but also two other equally unauthenticated documents, are SUSTAINED.

condition. According to Hardcastle, she believed she had a reasonable basis for making a CPS report and states that she "was obligated to do so as a mandatory reporter" and did do so for any improper or retaliatory purpose.[11] Id. at ¶ 14. Hardcastle also states that she was urged by the school nurse to do so. Id. at ¶ 11.

Any reporting obligation under CANRA comes within the "official proceeding authorized by law" prong of the anti-SLAPP statute. See Dwight R., 212 Cal. App. 4th at 711. Significantly, too, courts have found that actions taken in anticipation of further legal proceedings are also entitled to the benefits of § 425.16(e)(2). See Briggs v. Eden Council for Hope and Opportunity, 19 Cal. 4th 1106, 1115 (1990) ("Just as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16."). In addition, Plaintiffs do not dispute that school districts are required to issue truancy notices pursuant to California's Compulsory Education Law, California Education Code § 48260, et seq., and the issuance of such notices by definition precedes taking action against a parent or guardian for the truancy of his or her child.

Having determined that both the CPS report and truancy notices come within the protection accorded by the anti-SLAPP statute, in determining the propriety of a special motion to strike under the statute we must look to whether the challenged claims—here the First and Fourth Causes of Action—are indeed premised on those activities. In making that determination, the Court must "examine the *principal thrust or gravamen* of a plaintiff's cause of action" by "identifying the allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim" to determine whether section 425.16 applies. Hylton v. Frank E. Rogozienski, Inc., 177 Cal. App. 4th 1264, 1272 (2009) (emphasis in original).

---

[11] Significantly, too, Hardcastle denies any knowledge that Trujillo had criticized any District "corruption" during a school board meeting some twelve days before the incident which prompted her report to CPS. Hardcastle Decl., ¶ 7.

9

The Court finds that § 425.16 squarely applies to both claims challenged by the District's Motion. Aside from a reference to the IDEA (and Plaintiffs have clarified they are not asserting any IDEA claim by way of this lawsuit), the First Cause of Action references only the reporting of child abuse[12] and labelling A.T. truant by sending truancy notices to Trujillo. Similarly, the Fourth Cause of Action as asserted by Trujillo indicates only that the District retaliating against her in making a "false report" to CPS. Both those CPS reports and the issuance of truancy notices are protected by the anti-SLAPP statute, in the Court's estimation the substance of both causes of action comes within the purview of the statute.

Because the first step in determining the propriety of an anti-SLAPP motion to strike has therefore been demonstrated, we next turn to whether Plaintiffs can prevail on the merits of their Unruh Act claims, taking into consideration the fact that the protections accorded by the anti-SLAPP statute are to be construed broadly. See Equilon Enterprises, 29 Cal. 4th at 67; Cal. Code Civ. P. § 425.16(a). As indicated above, CANRA provides absolute immunity for mandated reporters, that no such reporter "shall be civilly or criminally liable for any report required or authorized by this article." Cal. Penal Code § 11172(a). As one California court noted, the scope of immunity for reporting suspected child abuse under CANRA is virtually unqualified:

> The legislative scheme is designed to encourage the reporting of child abuse to the greatest extent possible to prevent further abuse. Reporters are required to report child abuse promptly and they are subject to criminal prosecution if they fail to report as required. Accordingly, absolute immunity from liability for all reports is consistent with that scheme.

///

///

///

---

[12] While Plaintiff's Complaint appears to take issue with not only the CPS report itself, but also "failing to train staff and contractors in proper reporting of child abuse," Plaintiffs have cited no authority for the proposition that any such purported failure is actionable, and the Court has been unable to find any such authority, either.

10

Storch v. Silverman, 186 Cal. App. 3d 671, 678-79 (1986).[13]

In addition, Plaintiffs have offered no admissible evidence to rebut the Declaration of Elisabeth Hardcastle, in which Ms. Hardcastle opines that she had a reasonable basis for making a report to CPS on September 29, 2015, after being urged to do so by the school nurse, given what Trujillo had said about administering multiple doses of sleeping medication, as well as the condition of A.T. that Hardcastle had observed in class. Consequently, it appears the District is immune from any liability under CANRA associated with the report and that Plaintiffs cannot prevail on either the First or Fourth Causes of Action to the extent those claims argue an Unruh Act violation based on the CPS report.

With respect to the truancy notices, it appears undisputed that they are required by law. California's Compulsory Education law was enacted to ensure every child's right to an education by requiring a tiered intervention scheme in the event of non-attendance beginning with the notice of truancy, and proceeding to meetings with the parents or guardians, meetings with a school attendance review board, and possibly intervention by the district attorney's office in egregious circumstances. Cal. Educ. Code §§ 48260-48273. As an initial step, then, schools are required to report instances of truancy (id. at 48260(a)), and the notices must follow a designated format and be sent to the parents or guardians of a child whose attendance meets the criteria for truancy. Id. at § 48260.5. Given this tiered and progressively escalated approach to managing truancy as set forth in California law, the Court finds that truancy notices are part of an "official proceeding authorized by law" which, in turn, triggers anti-SLAPP protection through California Code

///

///

---

[13] While Plaintiff claims that immunities available under state law should not affect federal claims, and argues that its Unruh Act violations should be read as also including violations of the federal American with Disabilities Act ("ADA"), Plaintiffs do not plead in either the First or Fourth Cause of Action that they are asserting a violation of that subdivision of the Unruh Act (Cal. Civ. Code § 51(f)) which encompasses the ADA. That is significant because Plaintiffs' claims sound in intentional discrimination which the remainder of § 51 requires but which subdivision (f) does not. See Munson v. Del Taco. Inc., 46 Cal. 4th 661, 670 (2009).

11

of Civil Procedure § 425.16(e).[14] Following the subject incident of September 29, 2015, Trujillo and the District agreed that a change in placement was necessary but could not agree on an alternative placement until at least November 9, 2015, nearly six weeks later. See Compl., ¶ W. Given that placement dispute, truancy notices were sent inasmuch as A.T. was not in school and no placement agreement had been made.[15]

As the District argues, under the so called "official proceeding" privilege codified by California Civil Code § 47(b), conduct and statements made in the course of "any . . . official proceeding authorized by law" confers an absolute privilege to any communication made in such proceedings. Garamendi v. Golden Eagle Ins. Co., 128 Cal. App. 4th 452, 478 (2004). "The privilege applies to any communication made in such proceeding by a participant that has some connection or logical relation to the proceedings." Id. Significantly for purposes of the present matter, "[t]he 'official proceeding' privilege has been interpreted broadly to protect communications to or from governmental officials which may precede the initiation of formal proceedings." Slaughter v. Friedman, 32 Cal. 3d 149, 156 (1982). Since, as indicated above, truancy notices are a prerequisite under California's Compulsory Education law to taking further steps against a parent or guardian for a child's failure to attend school, the "official proceeding" privilege applies here, particularly given the mandate that it be applied in a broad fashion. Given that immunity, it also appears that Plaintiff A.T. cannot succeed on the First Cause of Action to the extent it relies on the truancy notices, either.

///
///
///

---

[14] While Plaintiffs try to argue that § 425.16(e) is inapplicable because no actual "proceeding" had commenced, given the fact that truancy notices are part of the California Compulsory Education process, the Court is unpersuaded by that distinction.

[15] Although Plaintiffs allege that truancy notices dated October 29, 2015, December 10, 2015, and January 14, 2016 were sent (see Compl., ¶ Y), and although the latter two dates are after an alleged agreement for placement was reached on November 9, 2015 (id. at Ex. X), because it cannot be ascertained to what period of absence the latter two notices are directed, the Court attaches no significance to the timing of those latter notices.

12

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the primary thrust of Plaintiffs' First and Fourth Causes of Action are directed to actions (in this instance a CPS report and truancy notices) that are entitled to the protection of California's anti-SLAPP statute, California Code of Civil Procedure 425.16. Moreover, given the immunities attaching to both of said activities, the Court finds that Plaintiffs have failed to demonstrate a probability of prevailing on either claim. The District's Special Motion to Strike (ECF No. 12) is accordingly GRANTED. Plaintiffs may file an amended pleading, should they wish to do so, not later than twenty (20) days following the date this Memorandum and Order is electronically filed. Failure to file an amended pleading as to the First and Fourth Causes of Action within those time parameters will result in dismissal of both causes of action, with prejudice and without further notice to the parties.

IT IS SO ORDERED.

Dated: March 19, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE